UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KIK CUSTOM PRODUCTS, INC., *f/k/a* CCL
CUSTOM MANUFACTURING, INC.,

        Plaintiff,

v.              C. A. No. 01-511-L

A. T. CROSS COMPANY, RAYTHEON
COMPANY, NATIONAL GRID USA f/k/a
BLACKSTONE VALLEY ELECTRIC CO., and
GENERAL CABLE CORP. f/k/a CAROL
CABLE CO.,

        Defendants.

## THIRD AMENDED COMPLAINT

Pursuant to this Court's Order, Plaintiff KIK Custom Products, Inc., *f/k/a* CCL Custom Manufacturing, Inc. ("Plaintiff"), by and through the undersigned attorneys, hereby amends its complaint as follows:

## STATEMENT OF THE CASE

1.  This is a civil action for cost recovery and contribution under Sections 107 and 113(f)(3)(B) and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607, 9613(f)(3)(B) as amended, for declaratory relief under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and for equitable indemnity under state common law. In this action the Plaintiff seeks to recover costs that they have incurred and may incur in responding to the contamination at the J.M. Mills Landfill and surrounding areas in Cumberland, Rhode Island (hereinafter, "the Site"). These areas have been designated by the U.S. Environmental Protection Agency ("EPA") as covered by the "Operable Unit 2" work to be performed in connection with the Peterson/Puritan, Inc.

Superfund Site located in Cumberland and Lincoln, Rhode Island.

2. In Count I, Plaintiff seeks to recover its necessary response costs incurred in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site pursuant to the strict, joint and several liability provisions of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

3. In Count II, Plaintiff having paid more than its respective equitable share of the response costs incurred or to be incurred in investigating and responding to such release and/or threatened release of hazardous substances at, on, near or from the Site, seeks contribution from Defendants pursuant to Sections 107(a) and 113(f)(3)(B) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(f)(3)(B), for their equitable share of such costs.

4. In Count III, Plaintiff seeks a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, that Defendants are jointly and severally liable for the response costs incurred or to be incurred by the Plaintiff in connection with the Site and/or their equitable share of such costs, and such other relief as the Court may deem appropriate.

5. In addition, Plaintiff also requests a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that each of the Defendants is required to provide contribution to Plaintiff pursuant to CERCLA Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), for all costs in excess of each Plaintiff's fair and equitable share of costs that it has incurred and may incur in connection with the Site.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. §§ 9607 and 9613(b) and 28 U.S.C. § 1331, and under the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367.

7. This Court has authority to issue a declaratory judgment concerning the

rights and liabilities of the parties pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 9613(b), because the claims arose in this district, the releases or threatened releases of hazardous substances occurred in this district, and the defendants reside and/or have done business in this district.

9. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## DEFENDANTS

10. Each of the Defendants is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

A.T. Cross Company, Raytheon Company, National Grid USA f/k/a Blackstone Valley Electric Company, and General Cable Corp. f/k/a Carol Cable Company are persons who generated and/or by contract, agreement or otherwise arranged for disposal or treatment of hazardous substances, as defined under 42 U.S.C. § 9601(14), or arranged with a transporter for transport for disposal or treatment of hazardous substances, which were transported to and/or disposed of at the Site. The Defendants identified in this paragraph 11 shall be collectively hereinafter referred to as the "Generator Defendants."

## THE NPL SITE

12. The Peterson/Puritan, Inc. Superfund Site is listed on the National Priorities List ("NPL") promulgated by the EPA pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, and codified at 40 C.F.R., Part 300, App. B (2000) (hereinafter the "NPL Site").

13. The EPA has divided the NPL Site into two operable units for the performance of work to remediate and clean-up the NPL Site. These two operable

units are referred to as Operable Unit 1 (hereinafter "OU-1") and the Site, which includes Operable Unit 2 ("OU-2"), which includes the Site.

14. The relief sought by Plaintiff in this action relates solely to Defendants' actions and Plaintiff's incurrence of response costs at the Site (*i.e.*, OU-2). Although detailed below, the history and cleanup of OU-1 are not at issue in this action.

## RELATIONSHIP OF THE PARTIES TO AND HISTORY OF OPERABLE UNIT 1 (OU-1)

15. OU-1 includes industrial and commercial property, including the former Peterson Puritan, Inc. (now Plaintiff KIK Custom Products, Inc., *f/k/a* CCL Custom Manufacturing, Inc.) facility in Cumberland (the "Cumberland Plant") with residential property to the west and mixed commercial/residential property to the east.

16. CPC International, Inc. ("CPC") (Unilever Bestfoods) is the former parent corporation to Peterson Puritan, Inc.

17. On or about April 19, 1966, CPC purchased the stock of Peterson Filling and Packaging Co. ("Peterson Filling"). Thereafter, Peterson Filling operated as a subsidiary of CPC.

18. On or about May 15, 1968, Peterson Filling purchased Puritan Aerosol Corporation, including the Cumberland Plant. As a result, Peterson Puritan, Inc. ("Peterson Puritan") was formed and operated as a subsidiary in the industrial unit of CPC's Corn Products division.16.

19. On or about May 1, 1987, CPC, as the parent corporation of Peterson Puritan, entered into an Agreement of Purchase and Sale of Stock (the "Hi-Port Agreement"), transferring all of the stock in Peterson Puritan to Hi-Port Industries, Inc., which later became known as CCL Custom Manufacturing, Inc. In or about May 2005,

the name of CCL Custom Manufacturing, Inc., was changed to KIK Custom Products, Inc.

20. By 1993, the RI/FS for OU-1 was completed and the EPA issued a separate Record of Decision for OU-1. To date, the remedy at OU-1 is being performed in accordance with that Record of Decision.

## RELATIONSHIP OF THE PARTIES TO AND HISTORY OF THE SITE (I.E., OU-2)

21. The Site (i.e., OU-2), which is the subject of this action, is located predominantly in the town of Cumberland with a small segment in the town of Lincoln. It is locally known as, and predominantly consists of, the J.M. Mills Landfill.

22. The Site is surrounded by industrial, residential and semi-rural properties. The surrounding area includes: state and town recreational areas; interspersed woodlands and wetlands; portions of the Blackstone River and adjoining canals; and inactive municipal water supply wells, specifically the Quinnville Wellfield in Lincoln, Rhode Island and the Lennox Street wells in Cumberland, Rhode Island.

23. The J.M. Mills Landfill was used for the disposal of wastes, including wastes containing hazardous substances, from approximately 1954 to 1983. During this time period, the J.M. Mills Landfill was privately owned.

24. Groundwater in the vicinity of OU-2 (the Site) has been affected by the release of hazardous substances at and from the NPL Site. The Rhode Island Department of Health closed the Lennox Street well in Cumberland, Rhode Island in 1979 due to the presence of volatile organic compounds in the municipal water supply. The Quinnville Wellfield in Lincoln, Rhode Island similarly was closed in 1979. Both the Quinnville Wellfield and the Lennox Street well are part of and/or in the vicinity the Site.

25. Between 1979 and 1982, the Rhode Island Department of Environmental Management conducted inspections and sampling that eventually led to an order closing the J.M. Mills Landfill as of June 30, 1982. During the same period, the EPA began investigating the area, including the J.M. Mills Landfill. The J.M. Mills Landfill would later be designated by the EPA as part of OU-2 at the NPL Site when the EPA divided the NPL Site into Operable Units in 1990.

26. In approximately 1999, the EPA began to focus on the cleanup of the Site (*i.e.*, OU-2), including primarily the J.M. Mills Landfill.

27. On or about June 21, 2001, in connection with the Site, Plaintiff and Unilever Bestfoods signed a Second Amendment to Administrative Order on Consent ("Second Amended AOC") with the EPA.

28. On or about October 14, 2004, Plaintiff and Unilever Bestfoods signed a Third Amendment to Administrative Order on Consent ("Third Amended AOC") with the EPA as part of their settlement with certain of the Defendants.29. Under the Third Amended AOC, Plaintiff's obligations at the Site are limited to and associated exclusively with completing the RI/FS at the Site. Under Paragraph 59 of the Third Amended AOC, upon issuance of the Record of Decision for the Site (*i.e.*, OU-2), all of Plaintiff's obligations under the AOC will terminate and Plaintiff will have no further AOC obligations with respect to the Site, specifically, or at the NPL Site, in general.

30. On or about June 21, 2001, in connection with the Second Amended AOC, Plaintiff also voluntarily signed a Peterson/Puritan, Inc. Superfund Site CERCLA Section 122(h)(1) Agreement for Recovery of Past Response Costs ("Section 122(h) Agreement").

31. Pursuant to the Section 122(h) Agreement, Plaintiff has paid, in part, the

EPA its past response costs incurred at the Site (*i.e.*, OU-2).

32. The RI/FS at the Site is currently being performed in accordance with the Third Amended AOC.

## COUNT I
## COST RECOVERY PURSUANT TO 42 U.S.C. § 9607

33.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 32 as though fully set forth herein.

34.   Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

>   (1)   the owner and operator of a vessel or a facility,
>
>   (2)   any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
>   (3)   any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
>   (4)   any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for -

* * *

    (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan . . . .

35. The Site, consisting of the J.M. Mills Landfill and the surrounding area (*i.e.*, OU-2) is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

36. The use, management, handling, storage, discharge, release and/or disposal of "hazardous substances," as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), at the Site has resulted in a "release" as that term is defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and/or a "threatened release," as that term is used in CERCLA. This release and/or threatened release has caused and threatens to cause contamination of the environment below, within and adjacent to the Site, including contamination of the soil and groundwater resources at, on, near or from the Site.

37. The hazardous substances that have been released and/or disposed of at the Site have come to be located in the surface and subsurface soils, in sediments, in surface water and in groundwater at, on, or near the Site. The hazardous substances found in the groundwater at, on or near the Site, include, without limitation, volatile organic compounds such as 1,1,1-trichloroethane, trichloroethylene, freon 11, 1,2-dichloroethene and metals such as chromium, nickel and lead. Hazardous substances in soils and sediments include, without limitation, benzo(a)pyrene, chrysene, indeno(1,2,3+cd)pyrene, bis(2hexyl)phthalate, arochlors, and asbestos insulation/transite.

38. The release and/or threatened release of hazardous substances at, on,

near or from the Site have caused Plaintiff to incur substantial "response costs," as defined in 42 U.S.C. § 9601(25), which have not been reimbursed. Such costs are necessary response costs that have been incurred consistent with the National Contingency Plan, as set forth in 40 C.F.R., Part 300 (2000).

39. Plaintiff will continue to incur response costs that are necessary costs consistent with the National Contingency Plan in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

40. Plaintiff is entitled to recover the necessary costs of response it has incurred and will incur at the Site from other liable parties.

41. Each Generator Defendant is a person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at the Site. Therefore, the Generator Defendants are strictly, jointly and severally liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), for costs which Plaintiff has incurred and may incur in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

## COUNT II
## CONTRIBUTION PURSUANT TO CERCLA

42. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 41 as though fully set forth herein.

43. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides an implied right to contribution for covered persons.17.

44. Plaintiff and Defendants are "covered persons" within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Further, Defendants are each liable or potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

45.   Further, Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), provides in pertinent part, that:

> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not a party to [such] a settlement.

46.   Plaintiff and Defendants are "persons" within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

47.   Plaintiff has resolved its liability for the RI/FS for the Site in an administrative settlement with EPA.

48.   The release and/or threatened release of hazardous substances at, on, near or from the Site has caused Plaintiff to incur necessary response costs as defined in 42 U.S.C. § 9601(25), which have not been reimbursed. Plaintiff will continue to incur additional necessary response costs with regard to the Site.

49.   Those response costs incurred and to be incurred by Plaintiff are consistent with the National Contingency Plan, as set forth in 40 C.F.R. Part 300 (2002).

50.   The costs incurred and to be incurred by Plaintiff exceed its proportionate share of potential responsibility at the Site.

51.   Plaintiff is entitled to contribution pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) and/or Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), from each Defendant for all costs in excess of each Plaintiff's respective fair and equitable share of costs that it has incurred and may incur in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

## COUNT III
## DECLARATORY JUDGMENT

52. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 51 as though fully set forth herein.

53. Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(9)(2), provides that in any action brought under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Court shall enter a declaratory judgment on liability for future "response costs" or "damages," as those terms are defined in CERCLA Sections 101(23), (24) and (25), 42 U.S.C. §§ 9601(23), (24) and (25) and CERCLA Section 101(6), 42 U.S.C. § 9601(6), respectively.

54. An actual controversy, within the meaning of 28 U.S.C. § 2201, exists between the Plaintiff and each of the Defendants regarding their respective obligations and legal liabilities for response costs and damages that have been and may be incurred by the Plaintiff in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site.

55. Plaintiff requests a declaration pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that each Defendant is strict, jointly and severally liable to Plaintiff under Section 107 of CERCLA for the costs that Plaintiff has incurred and may incur in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

56. Plaintiff further requests a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that each of the Defendants is required to provide contribution to the Plaintiff pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), and/or CERCLA Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), for all costs in excess of each Plaintiff's fair and equitable share of costs that Plaintiff has incurred and may incur in responding to the

release and/or threatened release of hazardous substances at, on, near or from the Site.

57. The Court is empowered by 28 U.S.C. §§ 2201 and 2202 to make a judicial determination of the rights, duties and obligations of the parties to resolve the controversy between the Plaintiff and each of the Defendants, and to grant such further relief as is necessary and proper.

WHEREFORE, Plaintiffs pray that this Court:

1. Enter judgment pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in favor of Plaintiff against each of the Defendants holding each such Defendant strictly, jointly and severally liable for the response costs incurred or to be incurred by Plaintiff in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site;

2. Enter judgment pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and/or Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), in favor of Plaintiff and against each of the Defendants holding each such Defendant liable for all response costs in excess of each Plaintiff's respective fair and equitable share of the response costs incurred or to be incurred by the Plaintiff in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site;

3. Enter a declaratory judgment in favor of Plaintiff pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), holding each of the Defendants strictly, jointly and severally liable for all additional response costs, plus interest, incurred or to be incurred by Plaintiff in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site;

4. Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 holding

each of the Defendants liable for their proportionate share of all response costs in excess of each Plaintiff's respective fair and equitable share of the response costs incurred or to be incurred by the Plaintiff in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site;

5. Award Plaintiffs attorneys' fees, costs and disbursements in this action as well as prejudgment interest on all response costs from the date such costs were incurred; and

6. Grant such other relief as this Court deems appropriate.

Respectfully submitted,

KIK CUSTOM PRODUCTS, INC., f/k/a
CCL CUSTOM MANUFACTURING, INC.
By Its Attorneys:

/s/ Karen A. Pelczarski

KAREN A. PELCZARSKI, ESQ. (#3357)
BLISH & CAVANAGH, LLP
Kap@blishcavlaw.com
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900  FAX: (401) 751-7542


Of Counsel:
JONATHAN A. MURPHY, ESQ.
(JAM-6052)
LESTER, SCHWAB, KATZ & DWYER, LLP
125 Broadway
New York, New York 10271-0071
(212) 964-6611
Fax: (212) 267-5916

Dated: February 14, 2008

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of February, 2008, I caused a copy of the within to be sent by electronic means (ECF) to the following counsel of record:

| | |
|---|---|
| Julie P. Barry | Gregory L. Benik |
| jpbarry@nutter.com | Gbenik@jreri.com |
| Stephen J. Brake | Kevin J. Bristow |
| sbrake@nutter.com | KJBristow@Verizon.net |
| Thomas C. Jackson | Keven A. McKenna |
| thomas.jackson@bakerbotts.com | KevenM@McKennaLaw.cc |
| Mortimer C. Newton | Deming E. Sherman |
| mortneon@gmail.com | Dsherman@eapdlaw.com |
| Dean S. Sommer | Matthew F. Medeiros |
| dsommer@youngsommer.com | Mfm@lmkbw.com, dcabral@lmkbw.com |
| Kocteau@lmkbw.com | Kristen W. Sherman |
| | Ksherman@apslaw.com |

**and by mail to the following counsel of record:**

William D. Gillis, Jr., Esq.
Donovan Hatem LLP
World Trade Center East
Two Seaport Lane
Boston, MA 02210

Brian M. Privor, Esq.
Kenneth A. Rubin, Esq.
Michael W. Steinberg, Esq.
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004

Martha A. Holt, Esq.
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

Irvin M. Freilich, Esq.
Gary N. Donner, Esq.
Robertson, Freilich, Bruno & Cohen, LLC
One Riverfront Plaza
Newark, NJ 07102

Jonathan A. Murphy, Esq.
Lester Schwab Katz & Dwyer
120 Broadway
New York, NY 10271-0071

/s/ Karen A. Pelczarski